May it please the Court. My name is Dennis Leonard. I represent the estate of Erma Jorgensen. I'd like to reserve a minute or two for rebuttal time permitting. Erma Jorgensen had no interest in managing her family's investments. The lower court applied Internal Revenue Code Section 2036 to disregard two limited partnerships for estate tax purposes, despite the fact that they were formed for management succession and other legitimate reasons. The estate advances three primary arguments on appeal. First, that the bona fide sale exception to 2036 should exclude Erma's capital contributions upon formation, and only the interest in that partnership that she held it at should be included in her taxable estate. Second, as an apparent matter of first impression, that 2036 contains a de minimis exception that should also apply as a complete defense. Third, also as a matter of first impression before this Ninth Circuit, if 2036 applies, it should apply proportionately, consistent with the Second Circuit's recent ruling in Stewart v. Commissioner. The outcome of this appeal should hinge on five unique facts that are interesting in this case. The first is that Erma was not dependent on the partnerships. She retained sufficient income and assets. Second, no discounts were ever taken on any gifts of any partnerships in the first four years, 1995, 1996, 1997, and 1998. The natural import is that there must have been some other non-tax motive for forming partnerships in the first place. Third, there were annual prorated distributions to all the partners simultaneously every year, consistent with their capital accounts. Fourth, although there were operational mistakes, they were promptly corrected as soon as they became aware of these issues, and they were corrected three years before Erma died and many years prior to any IRS involvement. Fifth and finally, the lower court actually found that Erma was motivated to form these partnerships for both management succession purposes and to provide for her family equally. This brings us to the first main point, the bona fide sale exception that operates as a complete defense. Beginning with the premise that Erma received full and adequate consideration for capital contributions, the pivotal issue then becomes whether her transfers were bona fide. This requires objective intent or objective evidence of intent of formation of a potential for, and I stress the word potential, for legitimate and significant non-tax purpose. The test is not post-formation success. We have that evidence here, both in the form of pre-formation correspondence, that the first partnership was intended to be actively managed as a family-run mutual fund, post-formation correspondence that confirms each of Erma's non-tax reasons, and the confirming testimony of six witnesses. A transfer is bona fide if it is made in good faith. It is not a strict liability statute. In the leading Ninth Circuit case of Bigelow v. Commissioner, we saw that the transfers were not in good faith because they immediately rendered the taxpayer destitute, errors during operations were not corrected during lifetime, and there was literally no potential non-tax benefit. In fact, the son had testified that the primary purpose was gift-giving. The situation here is critically different. Didn't the Bigelow case, Judge Gould's case actually, I had noticed that, yes, Your Honor. Didn't it hold that the transferor continued to enjoy economic benefit of the transferred property? Yes, it did, Your Honor. And that's not the case here? That is an issue in this case. We did not appeal a determination that there was an existence of an implied agreement on a superficial, What we have appealed is the extent of that agreement. Was it as to $10,000? Was it to everything? That is a question that the lower court did not answer, and it was specifically addressed as an error in Stewart v. Commissioner that should have happened in the lower court. So that is very much at issue. How much, and if anything, did Irma retain? And we see that the focal point of the Commissioner's argument has always been that there were operational errors, that there were bad checks. But there's been no effort made to quantify the amount of those bad checks. But the estate briefed this issue in detail, showing that the totality of the circumstances resulted in little more than $96,000 of unintended benefit that was caught during life and fixed during life. Irma physically repaid $78,500 of that amount, leaving just $17,000 at issue. Of that amount, $7,000 was addressed by an offsetting credit that the partnerships owed to Irma for formation and related expenses. Stewart says that the retained interest must be on the net benefits. We have to take that into consideration. This left just $10,000, less than three-tenths of 1% of the partnership's stipulated value at issue. This goes not only to the de minimis exception that we would argue, but even if that amount is deemed not to be de minimis, it should at least be applied proportionally consistent with those interests. However, if the bona fide sale exception applies, it is applied regardless of any implied agreement or to the extent of any retained interest. And the lower court's errors in this regard in rejecting Irma's purposes as not bona fide were most apparent within their discussion of managing succession. This should be a deniable review because we're dealing with an interpretation of the Internal Revenue Code and supporting regulations. Not to mention, this is a discussion about the characterization of a transaction for tax purposes, and both this court's decisions in Boise Cascade and Sachs v. Commissioner say that the deniable review is appropriate. Here, we know the lower court erred as a matter of law because they applied the wrong legal test. They applied the test of success after formation. That's not the test. That's a heightened test. What should have been applied and what the court purported to apply was the test from Begelow, and that is that the partnerships must require, quote, some kind of active management. The lower court's finding in this regard hinges singularly on the determination that the partnerships, quote, were not active, therefore, management succession was not a legitimate reason. But this in itself rose to the level of clear error because the lower court disregarded pre-formation correspondence that the partnerships were intended to be actively operated as family-run mutual funds. It ignored the fact that some of the daughter actually did assume management succession. It ignored four witnesses who testified that the partnerships were intended to be actively managed, that they were, in fact, actively managed. And if there's one point that I can convey today above all others, it's that the lower court ignored jointly stipulated documents, the evidence to 159 economic transactions, totaling $4.1 million of economic activity, which is more than twice the capital that the partnerships started with. Therefore, the determination that they were merely an untraded portfolio of securities should be considered to be clear error. In any event, now that we look at these documents and see that they were stipulated and that the witness testimony was largely unrebutted, we can go to Stern v. Commissioner, which says that undisputed facts applied to the proper legal test is reviewed de novo. Lastly, we know that the lower court errs a matter of law by speculating as to how or how Irma should have or could have structured her affairs differently. The lower court's subjective determination of a taxpayer's wisdom is inherently the wrong test to be applying because it will vary from court to court and what we're trying to implement here is a uniform system of federal taxation and that's why in 1976 Congress mandated that 2036 be an objective determination, not hinging on the speculative determination of any one person. I would like to turn now for a moment to the de minimis exception because the United States Supreme Court has held... You're down to two minutes if you want to save time for rebuttal. Understood, Your Honor. Regarding the de minimis exception, for 85 years the United States Supreme Court has said that all statutes contain a de minimis exception and 2036 is no exception. I would argue that the $10,000 discussed early should rise to the level of de minimis under any interpretation of that term because it represented only three-tenths of 1% and in any event, if it does not. The Second Circuit's decision in Stewart, which came out after the briefing in this case, provides the best and most rational approach to 2036 because it's the most consistent with the statutes and the regulations. 2036 on its face says it only applies, quote, to the extent of any retained interest and moreover the regulations state that a decedent cannot retain an interest to the extent that somebody else is enjoying it and here we see on page four of the estate's brief that there were numerous partnership distributions that went to the other partners. Almost 45% of the total lifetime distributions, over $470,000, went to somebody else. As a matter of law, Irma could not have retained that amount. I'll reserve the rest of my time for rebuttal. Thank you. And just so our records are clear, you're Dennis Leonard. Dennis Leonard. Correct. And my client's name is Jorgensen. Yes. We understand. Thank you. May it please the Court, I'm Karen Gregory representing the Commissioner of Internal Revenue. Section 2036 of the Internal Revenue Code returns to individuals' estate property that was transferred during life in which the transferor retained benefits or economic benefits or control. The Jorgensen estate is not challenging the District Court's conclusion that Mrs. Jorgensen did retain economic benefits and control over the property that she transferred during her lifetime to these family-limited partnerships. The Stewart case is an apposite for the primary reason that it did not involve a family-limited partnership. Stewart was a lifetime transfer of a partial interest in a mixed-use commercial property in which the Court had to quantify what was retained by the decedent in that case. In the situation with the family-limited partnership, this Court ambiguously said that you have to look at the transaction to see whether there was a genuine pooling of assets for a joint enterprise. And in that regard, the Court looks to see if there were legitimate and significant non-tax reasons for forming the partnership. And that is done using an objective standard. Why shouldn't the assessment be limited to the amount transferred? To the amount transferred? Yes. Limited? Yes. I mean, the amount transferred by Mrs. Jorgensen is the amount that was included in the estate as the tax court correctly held. And the reason for that is in a situation where it is determined that the family-limited partnership was not created as a genuine business enterprise. Here it was just merely a recycling of value. The partnership is disregarded as in abusive tax shelter cases when it's determined that the partnership in itself was problematic. It's disregarded and everything is taxed to the participants. So the reason Stewart doesn't apply here is because the family-limited partnership is disregarded and it's as though the transfers never occurred to the limited partnership and they are taxed to the estate. The argument we just heard was that these were corrected when noticed long prior to the closing of the estate and long prior to the involvement of the service. Is that accurate? There were checks written by Mrs. Jorgensen to repay items that were inappropriately paid out of the partnership funds, but the partnership's books were never corrected or they weren't corrected until after her death. That's significant because one of the factors that must be considered pursuant to Bigelow is whether or not the partnerships were operated at arm's length and commingling of assets is something that's significant. And the percentage that the estate identifies does not include the 200 plus thousand an estate tax for Mrs. Jorgensen's estate that was also paid out of limited partnerships' funds. And the arm's length consideration looks to see whether independent third parties participating in a partnership would accept these sorts of commingling of assets and payment of personal expenses, and clearly they would not. The record shows, the contemporaneous documentary evidence here shows that the overriding purpose for forming these limited partnerships was to facilitate the transgenerational transfer of assets and in certain instances to take advantage of discounts that were associated to the lack of marketability and control that arose when the assets were transferred. The form of ownership of these assets was changed from Mrs. Jorgensen individually to the limited partnerships. The reasons advanced by the estate for forming these partnerships do not rise to the level of legitimate and significant non-tax reasons for forming these partnerships. The management succession argument failed because the children who were the general partners of this partnership already had management responsibilities as trustees of Mrs. Jorgensen's trust and as her attorney in fact. So the limited partnership was not necessary to impose upon them some sort of management responsibility. They in fact already had it. Also, if you look at the list of transactions that appeared for the first time in the estate's reply brief, you'll note that the vast majority of those occurred after Mrs. Jorgensen's death. The dates are 2003 and 2004. If you look to see what happened while she was alive, there is very little going on. For example, in 2001, there was one transaction for $9. Some of these look like possibly, and we can't tell, possibly dividend reinvestments that were done automatically. And one event that was discussed at trial was Mr. Green recommended to Mrs. Jorgensen that she sell bonds that were tax-exempt for income tax purposes when she was living in Virginia and buy in their place California bonds, which was done. And so there are a number of transactions in the end of December 1999 or early January 1999 which demonstrate that. But other than that, there was very little going on. And that confirms the implied agreement that during Mrs. Jorgensen's life, these assets were treated as though they still belonged to her and it wasn't until after her death, excuse me, that the children started liquidating or they called it diversifying. That may be true. There's just not enough information there. And it doesn't support removing the assets from Mrs. Jorgensen's estate, which is what 2036 is all about. The question is, where does the transfer get taxed? In this circumstance, because there was no legitimate and significant non-tax reasons, there may have been reasons, they weren't legitimate and significant. Therefore, the property remains in the estate. The tax court applied equitable recoupment to reduce the amount? Yes. And the commissioner does not appeal that. Is that correct? Right. Was the tax court's decision based on preponderance of the evidence? Yes, it was. No presumptions were applied? Well, there were certainly, when you're looking at the retention of economic benefits and control based on an implied agreement, because it's an implied agreement, you have to, there have to be some inferences there. But the court basically looked at all of the evidence. Is there a difference between an inference and a presumption? Well, the presumption that starts out, just to back up a little bit here, the deficiency determination by the commissioner of internal revenue is presumed to be correct, and then the taxpayer bears the burden of showing that it's incorrect. That's the only presumption in play here, to my knowledge. The tax court, and then there's a provision, 7491 of the Internal Revenue Code, provides for burden shifting under certain circumstances which weren't met here. But that burden shifting doesn't apply where the preponderance of the evidence demonstrates a certain result, and the courts have consistently held that. And also the burden is on, in Bigelow, the court said, this court said, the burden is on the estate to establish, you know, that the transfer was appropriate and the property should be removed from the estate and that sort of thing. You don't have to use all your time. I know. Well, you are. I'm getting pretty close, Your Honor. Just in conclusion, the weight of the evidence here shows that the overriding purpose for these limited partnerships was to facilitate the transfer of assets from Mrs. Jorgensen to her children and grandchildren and to take advantage, certainly for estate tax purposes and in some cases gift tax purposes, for the discounts associated with limited partnership ownership for lack of marketability and control. Here the lack of marketability was purely contrived because these were liquid assets, and the estate admits that she retained some control. So clearly it was appropriate to disregard the partnership here and return those assets to the estate. Does the panel have any questions? Thank you, counsel. I think you have about a minute left. In no particular order, I think it's important to note that Irma disgorged, that she repaid the checks that she should not have had during her life. The question is, did she retain the interest at debt? If she repaid it, she didn't retain it. And it was an erroneous characterization to say that the partnerships didn't correct this until after she died. We see in the partnership returns being in 2001 that there were journal entries between the partnerships, and the CPA testified that the corrections were, in fact, made during her life. Regarding Stewart, it makes no distinction between real estate or family-limited partnerships, nor should it, because 2036 doesn't make a distinction between related parties and unrelated parties, and to hold different here would be to create an elevated standard for related parties that doesn't exist and has been rejected in every circuit that's discussed this statute. I think it's also critical to note that the children did not have control over the interest in the colonel's trusts or the other interests that were held by the grandchildren. The partnership facilitated to pool all interests and give the children control over all interests, not just Irma's. So the partnerships did, in fact, have management reasons over and above what was in the trust. And finally, I'd like to point out that besides the merits of this case, one of the fundamental overriding principles of law is to bring fairness into people's lives, and the Jorgens are no exception to that. And it is unconscionable that a $10,000 error that was not corrected at life should result in an $800,000 tax liability at death merely because they didn't know about the error and didn't fix it before Irma died. Thank you very much. Thank you, counsel. Case just argued will be submitted. Next case for argument is United States v. Sanders. Thank you.
judges: Reinhardt, Hawkins, Gould